IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT N. JOHNSON,

        Plaintiff,                  No. 2:10-cv-01821 JAM KJN

    v.

SCOTT SHEHADI, Individually and
d/b/a Sportsman, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS
_____/

        Presently before the court is plaintiff's motion for default judgment against defendant Scott Shehadi, who is the only remaining named defendant in this action.[1]  (Mot. for Default J. Dkt. No. 15.)  The undersigned heard plaintiff's motion for default judgment on its law and motion calendar on September 8, 2011.  Plaintiff Scott N. Johnson, an attorney, appeared at the hearing and represented himself.  No appearance was made by or on behalf of Mr. Shehadi.  For the reasons stated below, the undersigned recommends that plaintiff's motion for default judgment be granted, that judgment be entered in plaintiff's favor, and that plaintiff be awarded the requested damages and injunctive relief.

////

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).

I.     BACKGROUND

Plaintiff initiated this action on July 13, 2010, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq. (See generally Compl., Dkt. No. 1.) Plaintiff's First Amended Complaint, filed on December 9, 2010, is the operative complaint and alleges claims based on the ADA and the Unruh Civil Rights Act. (See generally First Am. Compl., Dkt. No. 6.)

Plaintiff, who is affected by quadriplegia and uses a wheelchair and a specially configured van, alleges that Mr. Shehadi owns, operates, manages, or leases a retail store called The Sportsman, which is located at 2556 Lake Tahoe Boulevard, in South Lake Tahoe, California. (First Am. Compl. ¶¶ 1-2.) Plaintiff alleges that Mr. Shehadi is liable under the ADA and Unruh Civil Rights Act because of architectural barriers to access at the business that plaintiff actually encountered, which consist of a lack of: "the correct number and type of properly configured disabled parking space(s) including the lack of a van accessible disabled parking space, [an] accessible route, [an] accessible entrance, and accessibility signage and striping." (Id. ¶ 4.) Plaintiff alleges that the removal of these architectural barriers is readily achievable. (Id.) Plaintiff seeks injunctive relief and statutorily authorized money damages in an amount of $8,000 pursuant to the Unruh Civil Rights Act. (Id. at 18-19; see also Mot. for Default J. at 4.)

An affidavit of service filed by plaintiff reflects that on February 7, 2011, plaintiff, through a process server, effectuated service of process on Mr. Shehadi at the address provided for The Sportsman. Plaintiff's process server made three attempts to personally serve Mr. Shehadi and, on February 7, 2011, left the summons, complaint, and other documents with the manager on duty at The Sportsman, Jeff Hanlou. (See Aff. of Serv., Dkt. No. 9; see also Req. for Entry of Default, Ex. A, Dkt. No. 10, Doc. No. 10-1.) Plaintiff's process server also mailed a copy of the summons, complaint, and other documents to the address provided for The

Sportsman. On April 20, 2011, plaintiff requested that the Clerk of Court enter default against Mr. Shehadi. (Req. for Entry of Default at 1.) On April 21, 2011, the Clerk of Court entered the default of Mr. Shehadi. (Clerks Cert. of Entry of Default, Dkt. No. 12.) In entering default, the Clerk of Court stated that it appeared from the record and papers on file in the action that Mr. Shehadi was duly served with process, but failed to appear, plead, or answer plaintiff's complaint within the time allowed by law. (See id.)

On July 14, 2011, plaintiff filed a motion for default judgment against Mr. Shehadi and served a copy of the motion on Mr. Shehadi by U.S. mail. (Cert. of Serv., July 14, 2011, Dkt. No. 15.) Plaintiff's motion also states:

> Plaintiff was contacted by the Defendant on April 29, 2011. The Plaintiff personally spoke with the Defendant and informed him about the Motion for Default Judgment. The Plaintiff is also emailing the Defendant a copy of this notice and Motion for Default Judgment.

(Id. at 3.) Plaintiff's motion is silent with respect to whether Mr. Shehadi expressed any intent to defend himself in this action. A review of the court's docket reveals that Mr. Shehadi has not appeared in this action or filed a response to the motion for default judgment.

Plaintiff's motion for default judgment seeks statutory damages pursuant to the Unruh Civil Rights Act in the amount of $8,000, which consists of minimum statutory damages of $4,000 for each of two actual visits to the premises in question that resulted in discriminatory events.[2] (See Mot. for Default J. at 4.) Plaintiff also seeks injunctive relief in the form of readily achievable property alterations that consist of providing the correct number and type of properly configured van-accessible disabled parking spaces, an accessible route to an accessible entrance, and accessibility signage and striping, all in accordance with the ADA and the Americans With Disabilities Act Accessibility Guidelines contained in 28 CFR Part 36. (See id. at 4-5.)

////

---

[2] Plaintiff is not seeking damages for two alleged instances of forgone visits to the accommodation over the past year. (See Mot. for Default J. at 4; First Am. Compl. ¶ 4.)

3

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004)

("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. Geddes, 559 F.2d at 560.

III.  DISCUSSION

    A.  Appropriateness of the Entry of Default Judgment Under the Eitel Factors

        1.  Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first Eitel factor favors the entry of a default judgment.

        2.  Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

           a.  Americans with Disabilities Act

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." Id. § 12182(b)(2)(A)(iv); see also

Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011) (en banc).[3] The ADA defines the term "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).[4]

      "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007). Furthermore, "[t]o succeed on a ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." Parr v.

---

[3] In Chapman, the en banc panel majority reiterated that "[t]he concept of 'discrimination' under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." Chapman, 631 F.3d at 945.

[4] Section 12181(9) lists several factors to be considered in determining whether an action is readily achievable:

    (A) the nature and cost of the action needed under this chapter;

    (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

    (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

    (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9)(A)-(D).

L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); accord Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006).

Here, plaintiff alleges: (1) that he is disabled (see First Am. Compl. ¶ 1); (2) that Mr. Shehadi's retail business, The Sportsman, is a place of public accommodation (id. ¶¶ 2-3); (3) that plaintiff was denied access to The Sportsman because of plaintiff's disability (id. ¶ 4); (4) that The Sportsman contains specified architectural barriers (id.); and (5) the removal of these architectural barriers is readily achievable (id.).  Because plaintiff's allegations are taken as true following the entry of default, the undersigned concludes that plaintiff has met his burden to state a prima facie Title III discrimination claim.

### b.   Unruh Civil Rights Act

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  Generally, to prevail on his disability discrimination claim under the Unruh Civil Rights Act, plaintiff must establish that: (1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) his disability was a motivating factor for the denial; (3) the defendant denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) the defendant's wrongful conduct caused plaintiff to suffer injury, damage, loss, or harm.  See Cal. Civil Jury Instructions (BAJI), No. 7.92 (Spring 2011 ed.).  As provided by statute, a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code § 51(f); see also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664, 208 P.3d 623, 624 (2009).

Here, because plaintiff's complaint properly alleges a prima facie claim under the ADA, plaintiff has also properly set out the necessary elements for his Unruh Civil Rights Act

1  claim. Accordingly, the second and third Eitel factors favor the entry of a default judgment.

2                  3.       Factor Four: The Sum of Money at Stake in the Action

3          Under the fourth factor cited in Eitel, "the court must consider the amount of

4  money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F.

5  Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494,

6  500 (C.D. Cal. 2003). Here, plaintiff seeks only the statutory minimum damages under the

7  Unruh Civil Rights Act for two acts of discrimination, i.e., $8,000. Plaintiff's request for

8  statutory damages is tailored to Mr. Shehadi's specific wrongful conduct, and the statutes

9  involved contemplate such an award.[5] Under these circumstances, the undersigned concludes

10  that this factor favors the entry of a default judgment.

11                  4.       Factor Five: The Possibility of a Dispute Concerning Material Facts

12          The facts of this case are relatively straightforward, and plaintiff has provided the

13  court with well-pleaded allegations and documentation supporting his claims. Here, the court

14  may assume the truth of well-pleaded facts in the complaint (except as to damages) following the

15  clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact

16  exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005)

17  ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters

18  default judgment, there is no likelihood that any genuine issue of material fact exists."); accord

19  Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

20          The undersigned has some pause regarding the possibility of a dispute concerning

21  material facts because Mr. Shehadi's apparently contacted plaintiff on or around April 29, 2011.

22  (Mot. for Default J. at 3.) However, in light of Mr. Shehadi's failure to appear at the hearing on

23  plaintiff's motion for default judgment, the undersigned concludes that the fifth factor

---

[5] Indeed, according to his motion for default judgment, plaintiff could also seek actual damages, attorney's fees, and statutory damages for additional acts of discrimination, but has chosen only to seek $8,000 in minimum statutory damages and injunctive relief.

nonetheless favors a default judgment.

         5.      <u>Factor Six: Whether the Default Was Due to Excusable Neglect</u>

Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. See <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Mr. Shehadi has had ample notice of this lawsuit. Plaintiff properly served Mr. Shehadi with process and also served Mr. Shehadi by mail with the motion for default judgment. Furthermore, Mr. Shehadi contacted plaintiff on April 29, 2011, and plaintiff notified Mr. Shehadi of the forthcoming motion for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to move for the entry of a default judgment, Mr. Shehadi has not appeared in this action to date and has done nothing to defend himself. Thus, the record suggests that Mr. Shehadi has chosen not to defend himself in this action, and not that the default resulted from any excusable neglect. Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

         6.      <u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); <u>ACS Recovery Servs., Inc. v. Kaplan</u>, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); <u>Hartung v. J.D. Byrider, Inc.</u>, No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the <u>Eitel</u> factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against Mr. Shehadi, individually and doing business as

The Sportsman, and recommends that a such a default judgement be entered. All that remains is the determination of the relief to which plaintiff is entitled.

      B.      <u>Terms of the Judgment to Be Entered</u>

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Considering plaintiff's briefing and the record in this case, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $8,000. The Unruh Civil Rights Act provides for, among other things, a minimum statutory damage amount of $4,000 per violation. Cal. Civ. Code § 52(a). Plaintiff seeks $8,000 in damages for violation of the Unruh Civil Rights Act based on two actual visits to The Sportsman. (Mot. for Default J. at 4.) The court recommends that plaintiff be awarded those statutory damages. In addition, because plaintiff satisfactorily alleged his ADA claim, the undersigned recommends that the plaintiff be granted injunctive relief, as described below, to remedy the identified architectural barriers to the extent the remediation is readily achievable.

III.     <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Dkt. No. 15) be granted.

2. Judgment be entered in plaintiff's favor and against the following defendant: Scott Shehadi, individually and doing business as The Sportsman.

3. Plaintiff be awarded statutory damages in the amount of $8,000.00.

4. Plaintiff be granted an injunction requiring defendant Shehadi to provide readily achievable property alterations that consist of: the correct number and type of properly configured, van-accessible disabled parking spaces, an accessible route to an accessible entrance, and accessibility signage and striping signage, all in accordance with the Americans With Disabilities Act of 1990 and the Americans With Disabilities Act Accessibility Guidelines contained in 28 CFR Part 36.

5. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

DATED: September 12, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE